**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Adeel Javed,**

    **Plaintiff,**

**v.**                          **Case No.**

**Hansen Technologies North America, Inc.,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **Adeel Javed** ("Plaintiff"), by and through the undersigned counsel, hereby files

this complaint against Defendant, **Hansen Technologies North America, Inc.** ("Defendant") and

alleges as follows:

## NATURE OF THE ACTION

1. This is an action for disability discrimination and retaliation under Title I of the

Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101–12117, and

the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01–760.11.

2. Plaintiff worked successfully for Hansen as a remote Senior Database

Administrator for nearly four years. He had no history of performance discipline, write-ups, or

behavioral concerns and remained qualified to perform the essential functions of his position.

3. In approximately May 2025, Plaintiff informed his team lead that his diagnosed

Myalgic Encephalomyelitis/Chronic Fatigue Syndrome ("ME/CFS") had flared and that he

would need disability-related leave to consult his physician and obtain treatment.

4. Hansen did not initiate an interactive dialogue concerning Plaintiff's stated need

for disability-related leave. Instead, his supervisor's treatment of him changed: regularly

scheduled one-on-one meetings were canceled or skipped, and Plaintiff became increasingly isolated from team communications.

5. Approximately four weeks after Plaintiff disclosed the flare of his disability and requested disability-related leave, Hansen terminated him on June 12, 2025.

6. At the termination meeting, Hansen expressly told Plaintiff that the termination was not a reflection of his performance and that his work had been valued. Hansen asserted that his position was being eliminated because of structural changes.

## JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction over the ADA claims under 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a).

8. This Court has supplemental jurisdiction over the related FCRA claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the ADA claims.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because a substantial part of the events and omissions giving rise to these claims occurred in this District while Plaintiff worked remotely from Pasco County, Florida.

10. Pasco County lies within the Tampa Division of the Middle District of Florida.

## PARTIES

11. Plaintiff is an adult resident of Pasco County, Florida.

12. Hansen is a corporation doing business in Florida and employed Plaintiff in Florida as a remote employee.

13. At all material times, Hansen was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), because it employed at least fifteen employees during the statutorily relevant period.

14. At all material times, Hansen was an "employer" within the meaning of the FCRA, Fla. Stat. § 760.02(7), because it employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

15. At all material times, Plaintiff was Hansen's employee within the meaning of the ADA and the FCRA.

## ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

16. On September 8, 2025, Plaintiff timely filed a Charge of Discrimination against Hansen with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2025-09951, and requested that the Charge be dual-filed with the Florida Commission on Human Relations.

17. The Charge identified disability discrimination and retaliation, described Plaintiff's ME/CFS, his disclosure and request for disability-related leave, the changed treatment that followed, and his June 12, 2025 termination.

18. On May 15, 2026, the EEOC issued a Determination and Notice of Rights authorizing Plaintiff to sue Hansen.

19. This action is timely filed within ninety days after Plaintiff's receipt of the EEOC's Notice of Rights.

20. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the ADA and the FCRA.

21. Defendant continues to be an "employer" within the meaning of the ADA and the FCRA.

22. At all times material hereto, Plaintiff was a protected employee under the ADA and the FCRA.

23. At all times material, Defendant acted with malice and with reckless disregard for Plaintiff's protected rights.

## FACTS

24. Defendant hired Plaintiff in or around September 2021 as a Senior Database Administrator, also described as a Senior Oracle Database Administrator.

25. Plaintiff's duties included database administration and management for Hansen's operations.

26. Plaintiff worked remotely from his residence in Pasco County, Florida, as part of an international team.

27. Plaintiff remained employed by Hansen until his unlawful termination on June 12, 2025.

28. Plaintiff performed his position successfully and was a dedicated, high-performing employee during his nearly four-year tenure.

29. Before his termination, Plaintiff had no history of performance discipline, write-ups, or behavioral concerns.

30. Hansen did not tell Plaintiff that he was terminated because of poor performance. To the contrary, Hansen told him at the termination meeting that its decision was not a reflection of his performance and that his work had been valued and appreciated.

31. Plaintiff possessed the education, experience, skill, and ability necessary to perform his Senior Database Administrator position.

32. At all relevant times, Plaintiff could perform the essential functions of his position, with or without a reasonable accommodation, including because his duties were performed remotely and he had successfully performed them while managing his condition.

33. Plaintiff suffers from Myalgic Encephalomyelitis/Chronic Fatigue Syndrome ("ME/CFS"), a neuroimmune illness that causes, among other symptoms, extreme fatigue and impaired physical stamina and concentration.

34. When active, Plaintiff's ME/CFS substantially limits one or more major life activities and major bodily functions, including concentrating, thinking, working, sustaining physical activity, and the operation of his neurological and immune systems.

35. Plaintiff was diagnosed with ME/CFS in approximately 2023 or 2024.

36. Plaintiff disclosed his disability to Defendant.

37. Plaintiff successfully managed his condition and continued performing the essential functions of his position.

38. Defendant knew of Plaintiff's impairment. In approximately May 2025, about four weeks before his termination, Plaintiff specifically told his team lead during a one-on-one meeting that he was experiencing a flare-up of ME/CFS symptoms.

39. During that meeting, Plaintiff connected his need for leave to his ME/CFS and advised his team lead that he would need disability-related leave to see his physician and obtain treatment.

40. Plaintiff's communication was a request for a reasonable accommodation and, at minimum, gave Hansen notice that he required a disability-related accommodation.

41.     Hansen's own reasonable-accommodation policy stated that Hansen would endeavor to accommodate employees who requested accommodation or whom Hansen had notice might need accommodation.

42.     Hansen's policy also stated that, after receiving a request or learning indirectly that an employee might require accommodation, Hansen would engage in an interactive dialogue with the employee.

43.     Hansen did not ask Plaintiff to clarify the expected timing or duration of the leave, direct him to Human Resources or its leave administrator, request supporting medical information, or otherwise engage in an interactive dialogue before terminating him.

44.     Immediately after Plaintiff disclosed the flare of his ME/CFS and requested disability-related leave, his supervisor's treatment of him changed.

45.     Plaintiff's regularly scheduled one-on-one meetings were abruptly canceled or skipped without explanation.

46.     Plaintiff also became increasingly isolated from team communications.

47.     The cancellations and isolation were departures from the manner in which Plaintiff had been managed before he disclosed the flare of his disability and requested leave.

48.     The changed treatment occurred while the team lead knew both that Plaintiff had ME/CFS and that he needed disability-related leave for medical treatment.

49.     Hansen did not advise Plaintiff during the intervening weeks that his job was in jeopardy, that his position had been selected for elimination, or that any performance or conduct issue required correction.

50.     On June 12, 2025, approximately four weeks after Plaintiff's protected request, Hansen abruptly terminated his employment.

51.     During the termination meeting, Hansen told Plaintiff that his position was being eliminated because of structural changes and lack of business.

52.     Hansen also told Plaintiff that the decision was not a reflection of his performance and that his work had been valued.

53.     Before Plaintiff's termination, Hansen had not informed him of a mass layoff affecting his workforce.

54.     Approximately four weeks before Plaintiff's termination, another database administrator had separated from Hansen. Plaintiff had been told that the other database administrator left for personal reasons, not that the employee's position had been eliminated in a reduction in

55.     Defendant further asserted that Plaintiff's position was eliminated and that he was not replaced.

56.     Hansen's generalized restructuring assertion does not, at the pleading stage, negate the plausible inference that disability or retaliation affected Plaintiff's selection for termination within the alleged reduction in force.

57.     Facts supporting that inference include:

(a)  Plaintiff's history of successful performance and absence of discipline;

(b)  Hansen's express representation that the termination was unrelated to performance;

(c)  Plaintiff's disclosure of an active disability and request for disability-related leave approximately four weeks before termination;

(d)  the immediate deterioration in his supervisor's treatment after that request;

(e) Hansen's failure to engage Plaintiff regarding the requested leave despite its policy requiring an interactive dialogue when Hansen knew an employee might need accommodation;

(f) the lack of advance notice to Plaintiff that his position was under consideration for elimination; and

(g) the abruptness and close temporal proximity of the termination.

58.     Information concerning when Hansen first considered eliminating Plaintiff's position, who recommended or approved his selection, what criteria were used, what the decisionmakers knew, what communications occurred between his team lead and the decisionmakers, and how Hansen treated other employees is predominantly within Hansen's possession and control and will be developed through discovery.

59.     As a direct and proximate result of Hansen's conduct, Plaintiff lost wages, employment benefits, and other compensation.

60.     Plaintiff also suffered emotional distress, humiliation, anxiety, and an exacerbation of his ME/CFS symptoms following the abrupt termination.

**COUNT I – ADA DISABILITY DISCRIMINATION**
**Discriminatory Discharge — 42 U.S.C. § 12112**

61.     Plaintiff incorporates paragraphs 1–60 to the extent relevant to this Count.

62.     Plaintiff has an actual disability and a record of disability within the meaning of 42 U.S.C. § 12102 because his ME/CFS, when active, substantially limits major life activities and major bodily functions.

63.     Alternatively, Defendant regarded Plaintiff as having an impairment within the meaning of 42 U.S.C. § 12102(3) after he disclosed his ME/CFS flare and need for medical leave.

64.    Plaintiff was a qualified individual under 42 U.S.C. § 12111(8) because he could perform the essential functions of his position with or without reasonable accommodation.

65.    Defendant knew of Plaintiff's impairment before his termination through his disclosure to his team lead and his request for disability-related leave.

66.    Termination is an adverse employment action.

67.    Defendant discriminated against Plaintiff on the basis of disability by selecting and terminating him because of his actual, recorded, or perceived impairment.

68.    The circumstances alleged above plausibly support that Plaintiff's disability was a but-for cause of his selection and termination, including the temporal proximity, the immediate change in treatment, Defendant's failure to engage him about the requested leave, his positive performance record, and Defendant's acknowledgment that the termination was not based on performance.

69.    Defendant's asserted restructuring rationale was pretextual as applied to Plaintiff and did not eliminate disability as a cause of his selection for termination.

70.    Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

71.    Hansen's violation caused Plaintiff economic and noneconomic damages.

**WHEREFORE**, Plaintiff requests judgment against Hansen and an award of all relief available under the ADA, including:

(a)    A declaration that Defendant violated the ADA;

(b)    Back pay, lost benefits, and prejudgment interest;

(c)    Reinstatement or, if reinstatement is not feasible, front pay;

(d)    Compensatory damages;

(e)    Punitive damages to the extent permitted by law;

(f)    Reasonable attorney's fees, litigation expenses, and taxable costs;

(g)    Appropriate equitable and injunctive relief; and

(h)    Such other relief as the Court deems just and proper.

## COUNT II – ADA RETALIATION

72.    Plaintiff incorporates paragraphs 1–60 to the extent relevant to this Count.

73.    Plaintiff engaged in protected activity when he disclosed that his ME/CFS had flared and requested disability-related leave to consult his physician and obtain treatment.

74.    Plaintiff had a good-faith, objectively reasonable belief that he was entitled to request a reasonable accommodation under the ADA.

75.    Defendant knew of Plaintiff's protected activity through his team lead, to whom he made the request in the course of their supervisory one-on-one meeting.

76.    Following the request, Defendant subjected Plaintiff to materially adverse treatment, including canceling or skipping regularly scheduled one-on-one meetings, isolating him from team communications, and terminating him.

77.    Defendant terminated Plaintiff approximately four weeks after his protected request.

78.    The close temporal proximity, immediate changed treatment, absence of performance discipline, failure to engage Plaintiff concerning the request, and abrupt termination plausibly support a causal connection between his protected activity and termination.

79.    Defendant would not have selected and terminated Plaintiff but for his protected activity.

80.    Defendant's asserted restructuring rationale was pretextual as applied to Plaintiff and did not eliminate retaliation as the but-for cause of his selection for termination.

81.    Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

82.    Defendant's violation caused Plaintiff economic and noneconomic damages.

**WHEREFORE**, Plaintiff, requests judgment against Defendant and an award of all relief available under the ADA, including:

(a)    A declaration that Defendant violated the ADA's anti-retaliation provision;

(b)    Back pay, lost benefits, and prejudgment interest;

(c)    Reinstatement or, if reinstatement is not feasible, front pay;

(d)    Compensatory damages to the extent permitted by law;

(e)    Reasonable attorney's fees, litigation expenses, and taxable costs;

(f)    Appropriate equitable and injunctive relief; and

(g)    Such other relief as the Court deems just and proper.

### COUNT III —FCRA DISABILITY DISCRIMINATION
### Discriminatory Discharge — Fla. Stat. § 760.10(1)

83.    Plaintiff incorporates paragraphs 1–60 to the extent relevant to this Count.

84.    Plaintiff has a handicap within the meaning of the FCRA because his ME/CFS substantially limits major life activities and major bodily functions.

85.    Plaintiff was qualified for his Senior Database Administrator position and could perform its essential functions with or without reasonable accommodation.

86.    Defendant knew of Plaintiff's impairment before his termination through his disclosure to his team lead and his request for disability-related leave.

87. Defendant discriminated against Plaintiff because of his handicap by selecting and terminating him.

88. The circumstances alleged above plausibly support that Plaintiff's handicap was a but-for cause of his selection and termination, including the temporal proximity, immediate changed treatment, failure to engage him about the requested leave, positive performance history, and Defendant's acknowledgment that the termination was not based on performance.

89. Defendant's asserted restructuring rationale was pretextual as applied to Plaintiff and did not eliminate disability as a cause of his selection for termination.

90. Defendant acted intentionally and with reckless disregard for Plaintiff's rights under the FCRA.

91. Defendant's violation caused Plaintiff economic and noneconomic damages.

**WHEREFORE**, Plaintiff requests judgment against Defendant and an award of all relief available under the FCRA, including:

a) A declaration that Defendant violated the FCRA;

b) Back pay, lost benefits, and prejudgment interest;

c) Reinstatement or, if reinstatement is not feasible, front pay;

d) Compensatory damages, including damages for emotional distress;

e) Punitive damages to the extent permitted by law;

f) Reasonable attorney's fees and taxable costs;

g) Appropriate equitable and injunctive relief; and

h) Such other relief as the Court deems just and proper.

### COUNT IV — FCRA RETALIATION

92. Plaintiff incorporates paragraphs 1–60 to the extent relevant to this Count.

93.     Plaintiff engaged in protected activity when he requested disability-related leave as a reasonable accommodation for his ME/CFS.

94.     Plaintiff had a good-faith, objectively reasonable belief that his request was protected by the FCRA.

95.     Defendant knew of Plaintiff's protected activity through his team lead, to whom he made the request during a supervisory one-on-one meeting.

96.     Following the request, Defendant subjected Plaintiff to materially adverse treatment, including canceling or skipping regularly scheduled one-on-one meetings, isolating him from team communications, and terminating him.

97.     Defendant terminated Plaintiff approximately four weeks after his protected request.

98.     The close temporal proximity, immediate changed treatment, absence of performance discipline, failure to engage Plaintiff concerning the request, and abrupt termination plausibly support a causal connection between his protected activity and termination.

99.     Defendant would not have selected and terminated Plaintiff but for his protected activity.

100.     Defendant's asserted restructuring rationale was pretextual as applied to Plaintiff and did not eliminate retaliation as the but-for cause of his selection for termination.

101.     Defendant acted intentionally and with reckless disregard for Plaintiff's rights under the FCRA.

102.     Defendant's violation caused Plaintiff economic and noneconomic damages.

**WHEREFORE**, Plaintiff requests judgment against Defendant and an award of all relief available under the FCRA, including:

a)   A declaration that Defendant violated the FCRA's anti-retaliation provision;

b)   Back pay, lost benefits, and prejudgment interest;

c)   Reinstatement or, if reinstatement is not feasible, front pay;

d)   Compensatory damages, including damages for emotional distress;

e)   Punitive damages to the extent permitted by law;

f)   Reasonable attorney's fees and taxable costs;

g)   Appropriate equitable and injunctive relief; and

h)   Such other relief as the Court deems just and proper.


## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

Dated this 11th day of August 2026.

Respectfully submitted,

*/s/ Chad A. Justice*
**CHAD A. JUSTICE**
Florida Bar Number: 121559
**SAMUEL DOXSEE**
Florida Bar Number: 127318
**JUSTICE LITIGATION ASSOCIATES, PLLC**
1205 N Franklin St
Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: sam@justicelitigation.law
E-mail: chad@justicelitigation.law
**Attorneys for Plaintiff**